UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATALIE BACON, | ) | CIVIL ACTION NO. |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| UNIVERSAL MOTORS, LLC and | ) | |
| DIGITAL FEDERAL CREDT UNION | ) | JUNE 28, 2021 |
|     Defendants | ) | |
| | ) | |

## COMPLAINT

### I.  INTRODUCTION

1.      This is an action brought by a consumer against an automobile dealership

for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the

Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. § 36a-770

*et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§

42-110a *et seq.*, for civil forgery, and under Article 2 of the Uniform Commercial Code

for rejection or, alternatively revocation of acceptance. Plaintiff also asserts claims

against the holder of the retail installment contract, Digital Federal Credit Union

pursuant to the terms of the contract and Conn. Gen. Stat. § 52-572g.

### II.  PARTIES

2.      Plaintiff, Natalie Bacon ("Plaintiff"), is a consumer and natural person

residing in East Hartford, Connecticut.

3.      Defendant Universal Motors, LLC ("Universal") is a Connecticut limited liability company and is licensed to operate an automobile dealership in New Britain, Connecticut.

4.      Defendant Digital Federal Credit Union ("DCU") is a credit union with a principal office in Marlborough, Massachusetts.

### III.   JURISDICTION

5.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640, 15 U.S.C. § 2310(d), and 28 U.S.C. § 1331.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has jurisdiction over Universal, because it is located in Connecticut and is organized under Connecticut law.

7.      This Court has jurisdiction of DCU, because it regularly conducts business in this state.

8.      Venue in this Court is proper because the transaction occurred in this state.

### IV.   FACTUAL ALLEGATIONS

9.      On or about April 27, 2021, Alva Lynch ("Lynch"), the father of Plaintiff's children, wished to purchase a motor vehicle from Universal.

10.     Lynch did not have a valid driver's license, and Universal knew this.

11.     Lynch requested that Plaintiff sign for the Vehicle so that he could purchase it, and he told her that he would make the down payment and the monthly payments.

12.     Plaintiff told Lynch that she would co-sign for a vehicle for an amount up to $15,000.

13.     On or about April 27, 2021, Plaintiff went to Universal to sign for a vehicle for Lynch.

14.     Universal knew that the Plaintiff was there solely for the purpose of assisting Lynch and that she would not be taking possession or driving any vehicle that was purchased and that she would not be making any payments.

15.     Lynch had selected a 2016 BMW X6 (the "Vehicle") to purchase.

16.     The Vehicle was not in Universal's inventory on April 27, 2021 but had instead been identified by Universal as a vehicle that was available to purchase at auction that Universal would acquire it the following day.

17.     Since Universal had not yet purchased or acquired the Vehicle on April 27, 2021, it had not conducted the safety inspection required to be conducted pursuant to Conn. Gen. Stat. § 14-62(g) prior to making a motor vehicle available for sale to a consumer.

18.     Universal prepared contract documents for the Vehicle including a retail installment contract (the "Contract") that listed a cash sale price of $55,999, a down payment of $5,000, and an amount financed of $59,645.17.

19.     The Contract and other documents listed Plaintiff as the sole purchaser even though Lynch, Universal, and Plaintiff all understood that Lynch would the one making payments and possessing the Vehicle.

20.      Upon learning that the amount financed was substantially greater than the $15,000 to which Plaintiff had agreed and that she would be the sole buyer of the Vehicle, Plaintiff initially refused to sign contract documents, and she left.

21.      Lynch and Universal employees or representatives followed Plaintiff to her vehicle, and they persuaded her to return to the dealership's office.

22.      By this time, Plaintiff had been at the dealership for several hours, and she was subjected to pressure by the other individuals present to sign the Contract and other documents so that Lynch could get the Vehicle.

23.      Plaintiff signed the documents at Universal, but Universal did not provide her with copies of the Contract or purchase paperwork.

24.      Lynch paid Universal a cash deposit of, on information and belief, $5,0000 at that time.

25.      Plaintiff left the dealership and returned home.

26.      After returning home on April 27, 2021, Plaintiff reconsidered the transaction, and she contacted Universal multiple times to inform them that she did not authorize the transaction and not to acquire the Vehicle.

27.      Although the telephone calls by Plaintiff to Universal were made during Universal's posted business hours, the calls were not answered and Universal did not return her calls.

28.      The morning of April 28, 2021, Plaintiff spoke with Universal and informed them that she did not want to proceed with the transaction.

29.      The person she was speaking to hung up on her.

30.     Shortly after that conversation, Plaintiff sent an email to Universal confirming that she did not authorize the purchase.

31.     Despite Plaintiff's notice to Universal that she wished to cancel the purchase, Universal acquired the Vehicle at auction later that day on April 28, 2021.

32.     On or about April 29, 2021, Universal delivered the Vehicle to Lynch.

33.     Universal knew at the time that it delivered the Vehicle to Lynch that the Vehicle was registered to Plaintiff and not to Lynch, that Lynch did not have a driver's license, and that Plaintiff had withdrawn her consent to the transaction.

34.     At some time on or shortly after April 27, 2021, Universal assigned the Contract to DCU.

35.     On information and belief, Universal assigned the Contract to DCU despite its knowledge that Plaintiff had not taken delivery of the Vehicle, that Lynch would be the individual driving and paying for the Vehicle, and that Plaintiff had withdrawn her consent to the purchase.

36.     Concerned that Lynch was driving the Vehicle unlicensed, Plaintiff notified the East Hartford police, and Lynch was detained, enabling Plaintiff to take possession.

37.     After Plaintiff acquired possession of the Vehicle, she was able to obtain copies of the contract documents from either Universal Motors or DCU, and she found some of the contract documents in the Vehicle.

38.     Upon reviewing the contract documents, Plaintiff discovered that her signature was affixed to a purchase order without her knowledge or consent.

39.     Plaintiff also discovered a CT Licensed Dealer Vehicle Inspection Form K-208 (the "K-208 form") that falsely certified that Universal had conducted the state

5

mandated inspection of the Vehicle on April 25, 2021, three days before it had acquired the Vehicle.

40.     Plaintiff also learned from DCU that Universal had falsely represented to DCU that Plaintiff's income far exceeded her actual income.

41.     Plaintiff believes, and therefore alleges, that DCU would not have approved the loan if it had known Plaintiff's true income, or if it had known that the Vehicle was being delivered to Lynch and not to Plaintiff.

42.     After acquiring possession of the Vehicle, Plaintiff saw that the Vehicle had a cracked side view mirror, and the check engine light was illuminated.

43.     Plaintiff brought the Vehicle to an independent repair facility and learned that the Vehicle had numerous defects which rendered the Vehicle unsafe to drive. Specifically, the Vehicle's valve cover gasket, oil pan gasket, control arm, axle shaft assembly, and drive/propeller shafts, bearings and joints all required replacement. Plaintiff obtained an estimate of $4,907.28 to repair the Vehicle.

44.     On May 24, 2021, Plaintiff returned the Vehicle to Universal, restoring the defendants as nearly as possible to their pre-contractual position.

45.     On May 25, 2021, Plaintiff, by her attorney's, notified Universal and DCU that she elected to revoke acceptance of the Vehicle or, alternatively, elected to rescind the transaction, and she made a written demand upon Universal.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT (Universal only)

46.     Universal violated TILA by failing to provide Plaintiff with a copy of the contract documents, which contained the TILA disclosures required by 15 U.S.C. § 1638.

47.     Universal is liable to Plaintiff for her actual damages, plus statutory damages of $2,000, and attorney's fees and costs.

### B.  RETAIL INSTALLMENT SALES FINANCING ACT

48.     Universal violated RISFA by failing to provide Plaintiff with a copy of the Contract at the time she signed it.

49.     Plaintiff effectively rescinded the purchase when she notified Universal on April 27 and April 28 that she did not wish to proceed with the transaction.

50.     To the extent that this prior notice did not constitute a notice of rescission, Plaintiff notified Universal and DCU of the rescission by means of the letter sent by her attorney.

51.     Plaintiff returned the Vehicle to Universal, restoring it and DCU as nearly as possible to their pre-contractual position.

52.     Plaintiff is entitled to a rescission of the transaction.

53.     DCU is subject to these claims pursuant to Conn. Gen. Stat. § 52-572g and the express terms of the Contract.

### C. REJECTION OR REVOCATION OF ACCEPTANCE DUE TO BREACH OF WARRANTY OF TITLE

54.     This Count is asserted in the alternative to the RISFA rescission count.

55.     Universal is a "merchant" as that term is defined in Conn. Gen. Stat. §42a-2-104.

56.     The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. §42a-2-105.

57.     The Vehicle is a consumer product, as that term is defined in §2301(1) of the Magnuson-Moss Federal Warranty Act (15 U.S.C. §§ 2301-2312), and was manufactured after July 4, 1975.

58.     Universal is a warrantor, as that term is defined in §2301(5) of Magnuson-Moss.

59.     Plaintiff is a consumer, as that term is defined in §2301(3) of Magnuson-Moss.

60.     Universal did not have title to the Vehicle at the time of sale.

61.     Universal breached the warranty of title to the Vehicle under Conn. Gen. Stat. § 42a-2-312, in that the title to the Vehicle was not transferred to Plaintiff at the time of sale because Universal did not own the Vehicle at that time.

62.     Plaintiff effectively rejected the Vehicle due to the breach of warranty of title when she notified Universal that she would not accept delivery on April 27 and April 28.

63.     To the extent that Plaintiff is deemed to have accepted the Vehicle, she sent notice of revocation of acceptance by means of the letter sent by her lawyer.

64.     Plaintiff is entitled to her damages pursuant to Conn. Gen. Stat. §42a-2-711(1).

65.     Plaintiff is also entitled to recover reasonable attorney's fees and costs pursuant to §2310(d) of Magnuson-Moss.

### D.  REVOCATION OF ACCEPTANCE DUE TO BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

66.     This Count is asserted in the alternative to the RISFA rescission count.

67.     Universal is a "merchant" as that term is defined in Conn. Gen. Stat. § 42a-2-104.

68.     The Vehicle constitutes "goods" as that term is defined in Conn. Gen. Stat. § 42a-2-105.

69.     A warranty that the Vehicle was in merchantable condition was implied by law in the sale of the Vehicle by Universal to Plaintiff pursuant to Conn. Gen. Stat. § 42a-2-314.

70.     Universal breached the implied warranty of merchantability because the Vehicle was not in merchantable condition at the time of sale to Plaintiff due to its defects that rendered the Vehicle unsafe to operate.

71.     Universal's breach of the implied warranty of merchantability was tortious in nature, in bad faith, was wanton and malicious, outrageous, and was undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury she sustained as evidenced by its failure to conduct the mandatory inspection as required by Conn. Gen. Stat § 14-62(g).

72.     Plaintiff rejected the Vehicle and, to the extent that she is deemed to have accepted the Vehicle, she effectively revoked acceptance of the Vehicle when she returned it to Universal and served notice of the revocation.

73.     For Universal's breach of the implied warranty of merchantability, Plaintiff is entitled to actual damages and common law punitive damages.

74.     Plaintiff also seeks an order allowing her to revoke acceptance of the Vehicle.

75.     DCU is subject to these claims as assignee of the Contract pursuant to Conn. Gen. Stat. § 52-572g and the express terms of the Contract.

### E. REJECTION OR REVOCATION OF ACCEPTANCE DUE TO FRAUD OR MATERIAL MISREPRESENTATION

76.     This Count is asserted in the alternative to the RISFA rescission count.

77.     Universal made false statements regarding Plaintiff's income.

78.     Universal made false statements that Plaintiff was the purchaser, when she had only agreed to co-sign on the loan.

79.     Universal's forgery of Plaintiff's signature on a purchase order also constituted material fraud.

80.     Universal's false statements constituted a material misrepresentation or fraud within the meaning of Conn. Gen. Stat. § 42a-2-721.

81.     Plaintiff effectively rejected the Vehicle when she notified Universal that she would not accept delivery on April 27 and April 28.

82.     To the extent that Plaintiff is deemed to have accepted the Vehicle, she sent notice of revocation of acceptance by means of the letter sent by her lawyer.

83.     Plaintiff is entitled to an order that she validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and §42a-2-721.

84.     Universal's conduct was willful, tortious in nature, and undertaken with a reckless disregard of Plaintiff's rights, entitling her to claim common law punitive damages.

## F.  CIVIL FORGERY

85.     Universal forged Plaintiff's signature on a purchase order.

86.     Universal is liable to Plaintiff for double damages plus common law punitive damages.

87.     DCU is subject to these claims as assignee of the Contract pursuant to Conn. Gen. Stat. § 52-572g and the express terms of the Contract.

## G.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

88.     Universal violated CUTPA as follows:

a.     The violations of TILA and RISFA as aforedescribed;

b.     It forged Plaintiff's signature on a purchase order;

c.     It committed credit application fraud by falsely inflating Plaintiff's income;

d.     It sold Plaintiff a Vehicle that it had not yet acquired;

e.     It sold Plaintiff a Vehicle prior to conducting the inspection required by Conn. Gen. Stat. § 14-62(g), which statute requires that the inspection be made prior to offering to sell a vehicle to the public;

f.      It failed to complete the inspection required by Conn. Gen. Stat. § 14-62(g) and did not provide Plaintiff with a CT DMV K-208 form showing the results of the inspection;

g.      It delivered the Vehicle to Lynch rather than to Plaintiff;

h.      It delivered the Vehicle to Lynch despite Plaintiff's objection;

i.      It sold Plaintiff a vehicle that was unsafe to drive; and

j.      It failed to provide Plaintiff with copies of the contract documents.

89.     Universal's conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that DCU has claimed that Plaintiff owes a debt and has reported the account on her credit, Plaintiff has incurred insurance, inspection, and transportation costs.

90.     Universal is liable to Plaintiff for her actual damages plus punitive damages and a reasonable attorney's fee and costs.

91.     DCU is subject to these claims as assignee of the Contract pursuant to Conn. Gen. Stat. § 52-572g and the express terms of the Contract.

92.     Plaintiff also seeks an order that the Contract is canceled as an equitable remedy under CUTPA.

WHEREFORE, Plaintiff claims actual damages, TILA statutory damages capped at $2,000, double damages, punitive damages, attorney's fees and costs, and an order stating that Plaintiff validly rescinded and/or revoked acceptance of the Vehicle, and any other relief deemed just by this Court.

PLAINTIFF, NATALIE BACON,

By: _/s/ Daniel S. Blinn_
      Daniel S. Blinn (ct02188)
      dblinn@consumerlawgroup.com
      Brendan L. Mahoney (ct29839)
      bmahoney@consumerlawgroup.com
      Consumer Law Group, LLC
      35 Cold Spring Rd. Suite 512
      Rocky Hill, CT  06067
      Tel. (860) 571-0408
      Fax (860) 571-7457